Next case is Roxanne Laboratories versus Canberra Pharmaceuticals in Invergine, 2014, 18-03. Mr. Shuler. May it please the Court. Ken Shuler on behalf of Roxanne Laboratories. We're here because the District Court committed three fundamental errors in the course of denying Roxanne's motion for a preliminary injunction relating to Invergine's ongoing sales of its near-identical version of Roxanne's patented calcium acetate capsule product. First, the District Court erroneously concluded that Invergine had raised a substantial question on the merits. But that conclusion was predicated on an erroneous claim construction analysis, one that was error both methodologically and substantively. Methodologically, the District Court ignored the fact that the term Psi-00 that we have here is one of a technical term that needs to be construed from the perspective of a person of ordinary skill in the arts, not from the perspective of a layperson. When we start with the intrinsic evidence, there's no special definition of that term in either the patent or the file history. So we have to ascertain the ordinary meaning of that term to the skilled artisan. Not only did the District Court ignore the fact that Psi-00 is a term of art, it effectively asked for affirmative proof from Roxanne that the patentee had used the term according to its ordinary meaning. But that stands claim construction on its head. In the art, is the size of a capsule defined or determined by its diameter, or let's say its size, or its feelability, it's the quantity that it can contain? They're interrelated concepts, but the evidence from Dr. Park was that in the human pharmaceutical context, size is something that refers to a common diameter. It's related to swallowability, which is... So is there evidence, direct evidence of that? Yeah, let me walk you through the size. So Dr. Park extensively detailed that to a person of ordinary skill in the field at the time, the phrase capsule of this size, 00, refers to all capsules designated as 00, including 00EL, because they share a common diameter. That's at A2475 to 78 at paragraphs 8 to 11. To get a little more technical, Your Honor, the evidence indicates that a person of ordinary skill in the art would understand that dimension that relates to swallowability is the diameter. That's, again, 2475 at paragraph 9. Mr. Shuller, this is on denial of a preliminary injunction. The court didn't really construe the claim as I understand it, and there's a very high standard of review on preliminary injunction denial, and so if we affirm, you go back and you try your case on what the claim means. Why isn't that the best course for us to follow, given the standard of review? Well, Your Honor, we think that this case is like RA diagnostics, in which when a denial of a preliminary injunction is based upon the predicate that the defendant has raised a substantial issue that goes to the merits, but when that is predicated on an erroneous preliminary claim construction, that is an error of law that needs to be reversed and remanded. Well, did the court make an erroneous claim construction, or did the court say, number one, I'm not construing it, and number two, there hasn't been shown to be a likelihood of success? I think it was the former, Your Honor, and I think that that's actually part of the error. I think that even at a preliminary stage, the court has to discern the ordinary meaning of technical terms like size 00. But maybe the judge finally decided he needed more evidence, needed to do an evidentiary hearing on that. I mean, I guess the question is here, you have something to point to, but the other side also has something to point to. Like, for example, the Lightfoot article that was part of the prosecution history, so technically is part of the intrinsic evidence. And when you look at that Lightfoot article, there's a table in there that makes it pretty clear that capsule size 00 is different from capsule size 00EL. Now, I'm not sitting here saying that must be definitive and dispositive here, but it is evidence on the other side. And then there's another manual excerpt in the record that was submitted by the other side that shows, again, a differentiation between capsule size 00 and capsule size 00EL. So I could see from the district court's point of view why he was troubled in trying to understand what does this term mean to one of ordinary skill in the art when there's evidence pointing like this. So why is he going to grant a preliminary injunction? Well, let me talk about one methodological point, and then I'll come to the Lightfoot reference because I think that it actually goes the other way. But the methodological point is that the district court understood and acknowledged that Roxanne had proffered substantial evidence relating to the fact that a person of ordinary skill in the art would construe the term in the manner we proposed, but rejected and refused to consider that evidence on the ostensible basis that that's the wrong place to start claim construction. But as this court said in Phyllis, the understanding of a person of ordinary skill in the art, the manner in which they understand a claim term, provides an objective baseline from which to begin claim construction. So our concern is that the district court did not even begin the analysis with the right frame of reference. That's the fundamental error because once you ground yourself in the science, in the specialized technical terms at issue, you understand that Lightfoot and all the other references point to a single ordinary meaning. And your fear is that the court is stuck with that understanding, that perception? Well, our fear is that the methodology was pretty clear. I mean the court was making references to things like the claim language being in the context of pharmaceutically acceptable capital. The court said that that's just a tangent. But it's not a tangent. As Phyllis says, the manner in which a claim term is used in the context of the claim itself is often highly instructive. As Judge Elori said, don't you now have the opportunity to go back and to show what one skill in the art would define as the differences in the capsules? And we certainly will attempt to do that. The question today is given the clear errors, both methodologically and substantively, that the district court committed, we're entitled to more than that. We're entitled to a remand with instructions that they have not raised a substantial question going to patentability. And should I come back to your question about Lightfoot? So Lightfoot is not inconsistent with the ordinary meaning for a number of reasons. The first is Dr. Park considered it and explained that to a person of ordinary skill in the art, they would understand that there's only eight capsule sizes. There's a number of references that we proffer that indicate that. And given that, that chart would show 12. But the persons, including the treatise from Bankersday, there's only eight. So that's the first point. The second point is they would know that those 00 and 00EL capsule references are actually one size. They're versions of the same size. The third point is that Lightfoot was before the board. And as you recall, the board's decision indicates that there's only one larger capsule size that is outside the scope of the claims. The last line of their opinion says that size 000 is not within the ambit of the claims. Didn't your side argue something like, you know, with this amendment, it's clear that outside the scope of this claim is size 000 for example, period? Yes. There's a line in your prosecution that says it like that, right? That is true. Which potentially suggests that beyond size 000, there can be and is something else also excluded from the scope of the claim. What would that be? That would be at A323. Right. But no, what would that other size be besides size 000? The sizes are depicted at A323. And those are veterinary sizes that start, I think, at size 7. And so the person at ordinary skill in the art would understand they're making clear that this is for human oral administration, first of all. And it has to be acceptable for swallowing because that was what Ms. Urazi said or Dr. Urazi said in her declaration. So the Durden reference, which is before the court, indicates that triple zeros typically can't be swallowed by humans. Actually, the claim says more than just size 00. It says size 00 or less, meaning for minimization. So the court wasn't so clearly wrong in saying that the elongated version probably wouldn't be included. Probably wouldn't? Wouldn't be included. Well, I think that that's just an assumption that, again, is not grounded in the perspective of the person of ordinary skill in the art. Dr. Park's declaration was unrebutted. He's the only person that spoke to what's the perspective of a person of ordinary skill in the art. And his opinions were well grounded in the independent references. The Durden reference, for instance, Your Honor, says triple zeros are not typically swallowable, but those in the size 00 family are. And the context in which the claim language appears, pharmaceutically acceptable capsule, said capsule that is size 00, is exactly the type of language that is of inclusion. For instance, if I were to say a shoe that is size 10, people would understand that it would include a size 10 wide, a size 10 e-shoe is one that is size 10. And that language was ignored by the district court. The context in which it appears, pharmaceutically acceptable, meaning swallowable, and the extrinsic evidence indicating that size 00 EL, the Health Caps USA reference says size 00 EL capsules are a great swallowable alternative. If I can swallow a capsule that's that long, if it's elongated, it might be a different story. Actually, Your Honor, the Jones reference, which is at 2629, says that that's not true. It's an interesting phenomenon. We reorient the capsule on our tongue so that the length is not a problem. It's much the way we can slurp down spaghetti, for instance. The dimension that impacts swallowability is diameter, and that's what Dr. Park explained, and that's what the Dirge, the… You seem to point to support your position, point to different portions of specification, for example. When I look at that, I don't see that the specification directs itself to size and diameter, but rather in field capacity. It talks about doses and the amount of content that a particular field can take or capsule. Isn't that significant? The size of a capsule does have some relation to how much can be filled into it, but as we indicated in our reply brief, one of our nurses from the ARC would readily do the math and show that the experiment that Ms. or that Dr. Rasey did, for instance, would not exclude a 00 EL because that would likewise not have resulted in the claim to fill amount. So you're right. The claim to fill amount, there's a portion of the claim says 667 milligrams on an anhydrous basis. Another part of the claim says in a pharmaceutically acceptable capsule, said capsule, that is size 00. So we still have to discern what the ordinary meaning of size 00, which is a technical term in this field, is to a person of ordinary skill. Do you have A2101 with you right now? 2101? 2101. There's a table in the lower right-hand corner on that page. Yes. And completely consistent with the table in Lightfoot at A386, this table at A2101 shows for various capsule sizes. There's capsule size 000, and then there's a capsule size 00 EL, and then there's a capsule size 00, capsule size 0 EL, capsule size 0. This table, this reference seems to strongly suggest that there's a difference in understanding about capsule size 00 and capsule size 00 EL, which is, you know, I'm not one of ordinary skill in the art, but I can read a table just like I can read the Lightfoot table, which is what your client relied on in prosecution history. Now, you know, you have Dr. Park, I guess, saying both Lightfoot and this other manual is off the mark, but nevertheless, how can we ignore these tables? So, Your Honor, the key, I think, is that the Banker reference, A2539, and other references of A2597 and 2630 indicate that there are eight capsule sizes. If you read this table as if 00 EL is a separate capsule size, there's 12. But everybody agrees there's eight. So that's the background. I don't know if everybody agrees with that because Lightfoot doesn't and A2101 doesn't either. Right above the table, it says table one lists the capsule sizes on the market and their respective filling capacity. And then it shows a whole bunch of different capsule sizes, including 00 EL different from 00. When I say everyone, I guess what I'm saying is it was unrebutted that Dr. Park's testimony was that those of skill in the art know there are eight. That is grounded in several references, including Banker, which is a treatise. So that's the first point. The second point is that the Vital Products brochure, which is at page 27 of our opening brief, visually depicts 00 and 00 EL being together. They're versions of the same capsule size. The Health Caps USA reference, which is at 2614, literally says 00 EL is an elongated version of size 00. So that evidence indicates to a person of skill in the art the eight and the versions indicates that. And Dr. Park's unrebutted testimony that that's the way that one of ordinary skill in the art would understand this, that these are interrelated versions, tells one of skill in the art that this really was clear error, both substantively and methodologically. Surely your time has just about expired, but we'll give you two minutes back for rebuttal if you need it. Mr. Silver. Thank you. May it please the Court, my name is Robert Silver on behalf of Appalese and with me is Sal Guerrero. Your Honor, I submit that Roxanne has not overcome an extremely heavy burden on reversing a denial of a preliminary injunction. You must overcome both factors. Roxanne says there were nine legal errors in a 14-page opinion, and I'm thankful Judge Chesler didn't write a longer opinion. I'm perplexed by their arguments about what they say Judge Chesler did with the intrinsic and extrinsic evidence. Page 11 of their brief, the Court refused to consider Roxanne's extrinsic evidence. Page 17, the Court failed to consider the extrinsic and intrinsic evidence. Page 20, the Court dismissed Roxanne's ample extrinsic evidence. Page 25, the Court summarily dismissed the extrinsic evidence. Their reply, the Court ignored the extrinsic evidence altogether. But what Judge Chesler merely said is, Roxanne, you're starting in the wrong place. You're starting it with extrinsic evidence, extrinsic, when you have to start with the intrinsic evidence. And the reason they started with it is because there's nothing in the intrinsic evidence that supports their position. Judge Chesler held as a fact... You're referring to the claim construction process, correct? Correct, but... Was there claim construction in this instance? I believe there was, Your Honor, because what he said in footnote A5, on page A5, footnote 3, he says he weighed the intrinsic and extrinsic evidence. And he said, again, the intrinsic carries greater weight, but the Court notes what is absent from Roxanne's extrinsic evidence is an independent reference showing a usage of the term, quote-unquote, Psy00 to refer to a Psy00EL capsule. And he came to what I believe is a preliminary claim construction when you look at A12. And he says he found that the claim term capsule that is Psy00 means one specific capsule, namely a Psy00 capsule and not a family of capsules that includes 00EL, and that is further elaborated upon in pages A6 through 7. Now, I believe that... First of all, I dispute the fact that Dr. Park's testimony was unrebutted. We had our expert, Dr. Goldberg, give a very lengthy declaration. And on page A1484, paragraph 62 of his declaration, he said there was a substantial difference between 00EL and 00 because it had a 12% greater fill capacity than the 00. And he went on to elaborate at great lengths. And I want to explain to you why Dr. Park's testimony about diameter and swallowability being completely irrelevant. Now, Judge Chen cited the Stegman reference, and you referred to A2101. But when you look at 2108 of that reference, and that's a 2002 article, it's not litigation-induced. It's prior art to the 032 patent. It says specifically, swallowability depends upon size, shape, surface area, and structure. Roxanne says on page 23 of their brief, length is irrelevant. That's what Dr. Park says. Now, let's imagine imaginary capsule and take his argument to the absurd level. Make a capsule that's the diameter of Roxanne's capsule. And make it six feet long. Under his theory, that length doesn't matter. Roxanne's theory, that doesn't matter. You could swallow that six-foot-length capsule because the only thing that matters is diameter. That's utterly absurd. Unless you're a sword swallower or a giraffe, you would not be able to swallow that. So to come out and say that just diameter matters is contrary to the extrinsic evidence, and it shows. I mean, there was an admonition in the Phillips case. It said, the specification is usually dispositive in claim construction and is a single best guide to the meaning of a disputed term. It is usually dispositive. Unsupported expert testimony should be discounted if at odds with a claim construction mandated by the intrinsic evidence. It's less reliable. It's biased. It's created for litigation. It's conclusory. Unsupported expert allegations are not useful to the court, and the bias is exacerbated if there is no cross-examination. Here, there was no cross-examination. We did give the counter-declaration of Dr. Goldberg, but there was no cross-examination at the preliminary injunction because there were no live witnesses. Now, I'd like to point out to you other reasons why I find Dr. Park's testimony incredible. In A2490, he talks about this exhibit, the FDA guidance on swallowability. Well, first of all, he makes it sound like it's FDA gospel. He doesn't tell the court it's only a draft. If you look at the front page of that FDA guidance, it says draft for comments only. Secondly, it's from 2013. What does the 2013 article tell a person of ordinary skill in the art in 2005 about swallowability, which Judge Hessler found to be an unsubstantiated, a peripheral tangent? Now, we showed numerous usages where there were larger sizes than 00. They claim that you can only swallow with 00. Obviously, you can swallow 00EL. In the Goldberg declaration, he showed a picture of a triple zero nutraceutical. Dr. Park countered that. He said his counter to that was, well, that's a nutraceutical. That's not a pharmaceutical for human use. Well, so what? If your esophagus is swallowing a triple zero capsule, it doesn't know what's inside of it. We also had in Exhibit 23 and 24 of my declaration, which did not make it into the appendix, two commercial products in triple zero size on the market, Fiorinol and Keflite. What do you make of the table that Roxanne relies on at A2635? This comes from the Modern Pharmaceutics textbook, where this table… I'm sorry. What was the page again, Your Honor? A2635. This is a table that, again, I'm not one of skills in the art, but the table makes it pretty clear. Is that the banker reference? Is it the banker reference? Yeah. I'm trying to determine who wrote this. I'm not sure. Well, Your Honor, again… Doesn't this one show that EL and standard are subsets of a particular capsule size? I don't see that anywhere on A2635, Your Honor. It shows merely zero, zero, zero, and up through size four. If you look at… I'm sorry. I'm looking at the top table. The top table, that shows… It just shows zero through four. That's right, and then you go all the way across the page. You'll see a column for volume of standard length… Yes, I see that, Your Honor. …and then volume of elongated length. Well, Your Honor… That seems to strongly suggest that, at least according to the authors of this textbook, they understand standard and elongated to be subsets of a particular capsule size. Well, it's contrary to the intrinsic evidence. As you noted, the Lightfoot reference merely separates it into… Well, this is not a litigation-induced textbook, right? No, it's not, but also… So, you know, it's evidence of something that we have to understand… It's evidence of something. …and we have to try to reconcile it with everything else. But if you look at the record, Your Honor, there are nine different references, and it merely shows that different manufacturers refer to capsule sizes in different manners. Now, they talk about the Banker reference saying there's only eight sizes, but what he said is he left out the word eight traditional sizes. He then goes on in the next two sentences and describes why 00EL and Y0EL are different. And, again, the Lightfoot reference separates it not into eight, like Dr. Park says. It separates it into 12, and that was written by the head of GlaxoSmithKline, who was its head of research and design for 46 years, and it's part of the intrinsic record. And so just like different manufacturers of cars may refer to different models in a different way, the extrinsic evidence, this is the only piece of extrinsic evidence that supports their position because when you look at the other capsule brochures and books that were cited in the record, they distinguish between 00 and 0EL in a different fashion than this one. And I wanted to further elaborate on Dr. Park's testimony. Like I said, he said diameter is the only thing you determine with respect to swallowability at 2475, and, again, Stegman at 2108 says you must consider all those other factors. Roxanne first came out at the district court and said there were a family of sizeless encapsules. And Judge Chesler noted in his footnote in his opinion, is the metaphor family really applicable to capsules? He questioned it because I challenged the judge to find a single reference in the record. I did a Google search. I challenged the judge to do it. Roxanne did not at all produce a single document in this case that says capsules come in families. So now they've switched their argument to diameter because they can't have any proof of capsule family sizes. But that's where Dr. Park started. And Dr. Goldberg, again, at 1484 of the appendix, paragraph 62, said in this field, there is no such thing as a family of capsule sizes. Also, Park said at A1173, paragraph 25, that 00 is the largest swallowable of most humans. Yet in his textbook, A2238, he has a chart with triple zero there saying it's suitable for human use. But yet when he's trying to impart patentability to the arbitrary selection of a size 00 capsule, I mean, 00 capsules have been around for 100 years. What's patentable about that? I mean, all they did was take a 00 capsule, take 667 milligrams of calcium acetate, which was disclosed in the FOSLO reference, and use a 60-year-old technique of dry roller compaction. I mean, that's their invention here. So I submit that Dr. Park's testimony is not consistent with the intrinsic evidence, and it shows why the judge discounted it greatly. Again, the court found that the addition of the size 00 to the original claim was a narrowing amendment. He said it was not peripheral, as Roxanne would argue, but that it was central. And let me just briefly touch on irreparable harm. There's not a single document in this case that shows that a sale that we made was a sale that we took from Roxanne. They have conclusory declarations of Tate and Peterman, and their only piece of evidence is an email from Rite Aid that says to them, and it's not even in the appendix, it says, there's somebody else new in the market, do you want to rebid? There's no evidence that we took sales away. The financial expert we had, Bernadowitz, said that Sandoz competes much more with Roxanne. It's the largest number two generic in the world, and if there was any price erosion, it occurred over the last five years when Sandoz entered the market in 2009. And I see I'm eating into my rebuttal time. You don't get rebuttal time. You are a Pelley. Oh. You don't have a cross field, so you still have two minutes. Okay, fine. Fine then, Your Honor. And I would caution the court to look at what those Tate and Peterman declarations state, because they're not consistent. When it's in their favor to try to explode damages through the roof, they come out and say that Peterman and Tate at A1041 say that Roxanne, like most generics, has a 90% profit margin. They don't define profit margin. Yet when they want to make Canberra look poor, they say, well, Canberra only has a 5% net profit margin. Well, net profit margin and profit margin are two different things, but they don't come out and define what profit margin is. So how can you say that they're 90%? I mean, profit margin can be net of rebates, net of returns, net of manufacturing costs. I mean, there's no definition there, and our expert said at 1439 it was purely speculative. There was no evidence that the sales that we made had anything to do with our client. And he also cited an FTC study at A1430, and that said where you're beyond the 180-day exclusivity period, if there are less than five players in the marketplace, then the additional entrants, such as Canberra and Indigent, has essentially no effect. And Tate's declaration, paragraph 44, is purely speculative. He said it will be difficult for Roxanne to regain its prior formulary state. That doesn't mean it's impossible. And in fact, our expert showed earlier when Sandoz was unable to supply product to the market, Roxanne was able to regain its price. So price erosion is reversible, and they are purely speculative in their financial declarations. Their declarations assume lost profits, price erosion, and triple damages, which we submit upon the denial of preliminary injunction. I don't see how we're going to prove willful infringement, but we'll see what this court has to say about that. They've asked that this be vacated and remanded, and we submit that it would be impossible for them to prove price erosion in view of the fact that there are now additional players in the marketplace. Thank you, Your Honor. You now have exceeded your time. Thank you, Mr. Silver. Thank you. Mr. Shuler has a couple of minutes or a minute, two minutes. Very briefly, I think that the fundamental problem here is that they appear to dispute what the ordinary meaning is, and that the district court never grappled with that issue. And under Teva, that's clear error. I mean, the district court has to grapple with the evidence, ascertain the ordinary meaning, and as the Supreme Court indicated, then discern whether the artisan would ascribe the meaning to that term in the context. Does a district court judge have to do a Markman hearing and a Markman order before granting or denying a preliminary injunction? No, I don't think that's reasonable. I think this court has constantly said it has to be a preliminary analysis. Obviously, we're going to have greater evidence at the Markman hearing than we did at the preliminary injunction stage, but the methodology still has to be the same. We don't approach the preliminary claim construction differently than we would approach the Markman or Markman. The second point I make is he said the specification is usually dispositive. Here, the specification gives an embodiment involving size 00 capsules, but under their version of the ordinary meaning, we'd be limited to that embodiment. When the specification specifically says it's not limited to the preferred embodiment, and under this court's precedent, including ARIA Diagnostics and MedRAD, it can't be limited. There would be an error of law to have what the district court did, which is to limit us to one embodiment described in the specification. Lastly, the file history. The file history includes statements, including at the A347, where the patentee referred to the size 00 capsules in the plural claimed. That's only consistent with Roxanne's proper construction, and the last point I'll leave you with is there may be a difference, but at least our construction, our proposed construction, harmonizes the various references. Their proposed construction cannot harmonize any of the ones that I've presented to you here today, and I ignore that statement in the prosecution history. Thank you, Mr. Shull. We'll take the case under advisement. All rise. The honorable court is adjourned from date today.